(No. 3725— 

ADA DIAL, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 9, 1946.*

*Petition of claimant for rehearing denied March 19, 1946.*

K. C. RONALDS, for claimant.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

ECKERT, J.

On June 18, 1941, the claimant, Ada Dial, was employed by the respondent as an attendant at the Anna State Hospital, Anna, Illinois. While discharging her duties as such attendant, she fell on concrete steps of the hospital, sustaining injuries which she alleges resulted in permanent partial loss of the use of her right

hand, her left eye, and her back, and total and permanent disability.

At the time of the injury, claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this state, and notice of the accident and claim for compensation were made within the time provided by the act. The accident arose out of and in the course of decedent's employment.

From the departmental report, it appears that, as a result of the fall, claimant received several small abrasions and a suffusion at the left side of the forehead, and several small scratches on the left upper arm; that immediately after the injury she complained of pains in the right wrist joint and on the left thigh. There were, however, no evidences of visible injury to the wrist or thigh, the injuries were considered mild, and there were no symptoms of brain concussion.

Claimant continued to perform her regular duties until August 5, 1941, at which time she was obliged to quit work because of the severity of the pain in her back. She also complained of pain in the region of the gall bladder, left wrist and both knees, and complained of shortness of breath on exertion and swelling of her feet and ankles. She was hospitalized at the Anna State Hospital from August 6, 1941 to August 19, 1941, when she left the hospital and returned to her home at McLeansboro, Illinois.

From a physical examination of the claimant, made at the hospital in April 1942, the following diagnosis was made:

1. Chronic, progressive, productive, osteo-arthritis, involving the entire spine and all joints and body surfaces.

2. Nitral stenosis with partial decompensation. The examining physician stated that the arthritic changes of the spine were of long standing, and that "while the alleged injury may have aggravated the

pain in her back, it is not the original cause." He found no evidence of injury involving the spine and stated that the condition would gradually progress until claimant developed a "Poker Spine."

The claimant, testifying on her own behalf, stated that she suffered an injury to her left eye, and that since the accident there is "a blur over the sight of that eye"; that she has not been able to open the lid of the left eye as well as she could before the accident, and that the upper lid droops. She also testified that there is a sunken place about an inch and a quarter in diameter in her forehead as a result of the injury. She testified that since the accident she can not grasp anything with the right hand, and that the bone of her right thumb is pushed up. There was no further or corroborating evidence as to these specific injuries. Claimant stated that she had constant pain in her back since the injury, and that walking increased the pain. She stated that since she returned to her home in August, 1941 she has not been able to do her ordinary house work; that she is unable to stand on her feet because of the pain in her back; and that any work she does must be done sitting down.

Claimant testified that she had a leave of absence from August 19, 1941, until March, 1942 when she returned to the institution and told the secretary of the Managing Officer that she would return to work if she could not get an extension of her leave. She stated: "I said there were some places I could work and some I couldn't. I said I wouldn't want to try to work where I would have to climb steps or on a violent ward." Following a physical examination, however, claimant was advised that she was not physically able to perform her duties as an attendant. She did not return to the hospital.

James Shriver, a radiologist, of Harrisburg, was called as a witness on behalf of claimant. He testified

that he made an X-ray of claimant's back on June 13, 1942; that the X-ray disclosed claimant's first lumbar vertebra tied to the second lumbar on both borders by arthritic deposits; that it disclosed deposits between the second and third, and between the third and fourth vertebræ, with lipping of the fourth lumbar vertebra. He also stated that the fourth lumbar vertebra showed a traumatic effect, and that the fifth lumbar vertebra had some arthritic deposits, with the right border shorter than the left.

The witness was then asked whether claimant was completely disabled from the performance of her usual labors. His answer was: "Well, I don't like to answer that question. I don't know."

Dr. E. M. Cummins, also called as a witness for the claimant, testified that the X-ray, taken by James Shriver on June 13, 1942, showed arthritic deposits not only of the lumbar vertebræ, but of the dorsal vertebræ; that there were arthritic deposits between the ninth and tenth dorsal vertebræ which had coalesced, as had the eleventh and twelfth dorsal vertebræ. He testified that the first and second lumbar vertebræ, the second and third, and the fourth and fifth, had completely coalesced; that there was a crushing of the upper and outer lip of the fourth lumbar vertebra on the left side; that the X-ray showed very distinctly that claimant: "can't use this spine at all." He stated that the crushing of the upper and outer lips of the fourth lumbar vertebra could have been caused by trauma, and that the condition was permanent and progressive.

It is clear from the record that claimant sustained an injury in the course of her employment. She has failed to prove, however, by a preponderance of the evidence, that she has sustained any specific loss as a result of that

injury, or that she is totally and permanently disabled. The testimony of claimant's own witness negatives her claim for a permanent and total disability; her testimony that she is unable to do any type of work is insufficient to entitle her to an award, and is contradicted by her own offer to return to work at the hospital.

If claimant has sustained a permanent partial disability, she must establish by competent evidence the difference between the average amount which she earned before the accident and the average amount which she is able to earn in some suitable employment after the accident. *Evans* vs. *State,* 13 C. C. R. 65; *Doyle* vs. *State,* 13 C. C. R. 179. This, claimant has made no attempt to do, and in the absence of such proof no award can be made for partial permanent disability.

Claimant, however, is entitled to an award for temporary total disability from August 6, 1941 to April 8, 1942, a period of thirty-five weeks, for which time she was paid the total amount of $252.00. During the year preceding the injury, claimant was employed by the respondent at a salary of $67.00 per month. Her compensation rate is $11.03 per week.

She is therefore entitled to receive the sum of $11.03 per week for thirty-five weeks, or $386.05, from which must be deducted the sum of $252.00 paid to her for unproductive time.

An award is made to claimant in the amount of $134.05, all of which has accrued and is payable forthwith.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."